THOMAS E. ANDREWS, In Pro Se
Reg No:24601-081
3705 W. Farm Rd.
Lompoc, Ca. 93436

FILED IN UNITED STATES DISTRICT
COURT, DISTRICT OF UTAH

SEP 1 - 2020

BY D. MARK JONES, CLERK
_____
DEPUTY CLERK

UNITED STATES OF AMERICA
FOR THE
CENTRAL DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>   Plaintiff,<br><br>Vs.<br><br>THOMAS EDWARD ANDREWS,<br>   Defendant. | Case No: 2:16-Cr-00211O-DS<br><br>Judge: David Sam<br><br>EX PARTE MOTION FOR IMMEDIATE<br>RELEASE UNDER CARES ACT TO<br>HOME CONFINEMENT<br>(18 U.S.C §3582 (c)(A)) |

    **COMES NOW,** Defendant Thomas Edward Andrews ("Defendant"), who petitions this Court for immediate release to home confinement pursuant to 18 U.S.C. §3624 (C)(2), as amended by the CARES ACT of 2020, along with any other federal status and such that may apply for the relief sought, in consideration of the perils associated with the COVID-19 pandemic.

### STATEMENT OF FACTS

1. Defendant is currently serving a ninety seven month (97) sentence at Lompoc Camp in the State of California.

2. Defendant suffers from a variety of medical condition that are considered co-mordibities with regard to COVID-19. Should the defendant contract COVID-19, these co-mobifities could mean his death. These medical conditions are supported by Lompoc Complex Medical findings that is attached hereto and hereby incorporated as of this reference as Exhibit "1".

3. On April 10, 2020, Defendant sent a BP-8 ("Cop-out") though the email to the Warden, as a administrative remedy, asking to be released under the CARES Act.

4. On or about April 15, 2020, the U.S. Office of Inspector General ("OIG"), launched a formal investigation in th out break of COVID-19 at the Lompoc Prison Complex. Among the many findings in the report and finding of fact that applies

1

to the undersigned; "[...] use of home confinement in response to the spread of COVID-19 at FCC Lompoc in April, as a mechanism to reduce either the at-risk inmate population of the over all prison population in order to assist with social distancing, was extremely limited. As of May 13, 2020, over 900 Lompoc inmates has contracted Covid-19 and we (The OIG office) determined that only 8 inmates had been transferred to Home Confinement in accordance with BOP guidances.

We describe these findings in greater detail, and other observations we made during our inspection, in the Inspection Results section of this report". A true and complete copy of the entire OIG report is attached hereto and hereby fully incorporated in to this Motion as of this reference as Exhibit "2".

5. On May 16, 2020, The American Civil Liberties Union ("ACLU"), filed a class action suit against the Acting Warden of Lompoc and Michael Carvajal in his capacity as Director of the Bureau of Prisons ("BOP").

6. On June 11, 2020, Defendant was <u>found eligible</u> for the CARES Act and my relocation was sent. (see Exhibit "4").

7. On July 7, 2020, Defendants father passed away from alleged COVID-19.

8. On July 13, 2020, Defendant received a response to the BP-8 that was filed by email in Wardens office on April 10, 2020, Well over 90 days after it was sent. The hand written response is as follows: "you are currently pending relocation. Once that is approved we can submit your RRC/HC referral". A ture and correct copy of the BP-8 sent on April 10, 2020, with the hand written response dated July 13, 2020, is attached hereto and hereby incorporated as of this reference as Exhibit "3".

9. On July 14, 2020, a Court granted the ACLU a Motion for Preliminary Injunction, related to a class of inmates under the CARES Act. Defendant is not signed up in that class. However, in the Order by Chief Justice C. Marshall, states the following findings of fact; " The evidence before the Court demonstrates meaningful social distancing is not possible at Lompoc absent a reduction in the inmates

population," and that "there is no evidence [BOP Officials] are <u>prioritizing</u> their <u>use</u> of <u>statutory</u> authority under the CARES Act to grant <u>home</u> <u>confinement</u> to Lompoc <u>inmates</u> in light of the pandemic." Her Honorers Order the BOP to, among other things, "<u>Make</u> <u>full</u> and <u>speedy</u> use of the BOP authority under the CARES ACT [...]". (see Torres, et. al. v. Milusnic, et al, Ninth D 2020, cv-2044500-cbm-pvc)

10. On July 10, 2020, Defendants unit manager informed him to give his case manager, Mrs Rhodes, his <u>address</u> in <u>Utah</u>. Defendant did as asked and gave the address for Home Confinement. Defendant stood in the office while Mrs. Rhodes input the new address. Defendant, was informed by Mrs. Rhodes, "that is it, your family will receive a call to look at the house."

11. On July 24, 2020, Defendant received a letter from United States Senator Kamala D. Harris. Senator Harris states the following: "I am forwarding to you the responce I have received about your case; '**[MR.] Andrews has been review under the CARES Act and found eligible. However, they are currently waiting for his relocation to be accepted from USPO, which was sent out on June 11, 2020. It seems he has changed his address a bunch of times and this has greatly slowed the process down. Once the approval comes back for the relocation, they will then send over to RRMB to process for a supervision for home confinement**". A true and correct copy of the letter from Senator Harris is attached hereto and hereby incorporated as of this reference as Exhibit "4".

12. On August 8, 2020, Defendant is informed by his daughter, that, the USPO office in Salt Lake City did not have any relocation file on Defendant and in fact one was not needed as Defendant was returning to he sentencing district. At this point Defendant sent a email BP-8 to case manger Rhodes stating the following: "My family is telling me that 'Utah USPO' said 'they do not have my relocation for me.?". A true and correct copy of the email is attached hereto and hereby incorporated by this reference as Exhibit "5".

13. On August 12, 2020, at 8:37 am, Defendant received a response to the Augusts

3

8, 2020 question as follows: " A relocation was sent on 6/11/2020. After your father died, you provided another address. We are waiting for a letter from the person you're proposing to live with stating their willingness to have you live with them." The undersigned will state the following to the above email; I changed my address to a California address with case manage Colson in February of 2018 and USPO looked at my house then. The undersigned was not asked to provide the same said address on June 11, 2020. I did give a new address when I was asked by the undersigned unit manger on July 10, 2020, additional as Case Manger Rhodes finished inputting my new address, she made that statement, "that is it [...]" and at that time did not inform me of a needed letter. Then around 10:37 am on that same day, Defendant received a updated email that stated; "Also, you are sentenced out of Utah? A relocation is not needed if you are going to your sentencing district." This last statement is germane to the policy of the BOP. The case manger knew or should have known the policy of the BOP, however, in light of all the findings of fact one can only concluded that some type of gamesmanships the Lompoc has undertaken with the undersigned. As the truth has now came out. To wit, "A relocation is not needed." The undersigned has now been held up by this mistake and the mistake was admitted to Senator Harris office. A true and correct copy of the emails of Augasts 8-12, 2020 is attached hereto and hereby incorporated as of this reference as Exhibit "6".

### RELIEF SOUGHT

14. Defendant requests immediate release and home confinement pursuant to 18 U.S.C. 18 §3582 et. al. Defendant has a variety of life threatening medical conditions that could lead to his death should be contract COVID-19. The institution in which Defendant is incarcerated, as the OIG report shows along with the findings of the Honorable Chief Justice C. Marshall of the Ninth District Court points out, "there is no evidence [BOP Officials] are prioritizing their use of statutory authority under the CARES ACT to grant home confinement to Lompoc inmates in light of the pandemic." or following the Order to, "Make full speedy use of

4

the BOP authority under the CARES ACT [...]". The Statements of facts only lead to supporting that Lompoc has failed to be "speedy" with the way Lompoc has handed the Defendant, a eligible inmate for the CARES ACT with life threatening co-mordibites that could mean a death sentence to the Defendant.

15. Section 3582 (c) states that a sentencing Court can reduce an inmates sentence whenever "extraordinary and compelling reasons warrant such a reduction". 18 U.S.C. §3582 (c)(1)(A)(i): This section was intended to act as a "safety valve" for modifying sentences when justified and when various factors that previously could not have been anticipated are encountered after the original sentence was passed.

16. The First Step Act of 2018 ("FSA"), further broadened the concept. In Section 603 of the FSA allowed a Defendant to make a motion to the sentencing Court AFTER first requesting such relief from the Warden of the facility in which the inmate was incarcerated.

17. The Warden has found the Defendant is "eligible", passing all the conditions for home confinement in April. The facility has responded to Senator Harris making statements of this fact of "eligibility", along with the said intentions to send Defendant home. However, for reasons unknown to the Defendant, it has well over 100 days, which the Defendant is still in a high risk environment. This can all be corroborated by the findings of the OIG and the findings of fact by the Ninth Distract Court Order.

**WHEREFORE:** The undersigned respectfully request that this Court grant an Order for the following:

- An Order directing the BOP to immediately release Defendant to Home Confinement, for the reasons stated herein and grant any other relief applicable under the Federal Statues that may apply which were not brought forth above.

//

//

Pursuant to 28 U.S.C. §1746, I, Thomas E Andrews, hereby declare that the forgoing is true and correct to the best of my knowledge and under the pains of penalty for perjury.

Executed this 21 day of Augusts, 2020.

By: _____
Thomas Edward Andrews, In Pro Se

//

//

//

//

//

//

//

//

//

//

//

//

//